The Court,

Wootten, J.,

charged the jury : As you are already. aware, this is an action brought by John Minn against the Philadelphia, Wilmington and Baltimore Railroad Company, for the purpose of recovering damages, which it is alleged he sustained on the night of the 18th of March, 1856, by reason of a collision between what is called' the through freight train, which left Baltimore at half-past five o’clock of that day, and an extra freight train which left1 the same place at half-past seven o’clock of the same day, and followed the through freight train. The regular mail train having left at a quarter before seven.
It appears that the mail train, at some one of the .intermediate stations, p'assed the through freight train, and that the latter then proceeded towards its place of destination, and that about nine o’clock, when the train was in sight of Aberdeen, about four miles from Havre de Grace, the through freight train on which the plaintiff was, was run into by the extra freight train, which was following it, whereby the1 collision referred to in this case occurred, which resulted in the injury to the plaintiff for which he is now seeking redress.
The plaintiff rests his right of recovery on the ground of the responsibility of the defendants—the Railroad Com-•pony—to carrjqhim over their road safely, as a passenger. But it is further contended for him, that whether he was on board as a passenger or otherwise, if he was rightfully and lawfully there, the defendants are equally liable for any injury-he received, which resulted from the negligence of the defendants’ servants. On these grounds, the plaintiff asserts his right of recovery of damages commensurate with the injury received by him.
The defendants resist his right "of recovery on several distinct grounds.
First. That the defendants were not and could not be *495 regarded as common carriers of persons, in respect to the plaintiff on that occasion.
Second. That if the defendants are liable at all, it is on a special contract or undertaking, and that he cannot recover in this form of action.
Third. That the relation in which the plaintiff stood to the defendants on this occasion, was not that of a passenger or traveller over their road, as in ordinary cases, but that he was in the freight train ‘before mentioned, rather in the character or capacity of an employee or servant, by the permission and agreement of the company, to take care of his live stock, and upon terms and conditions which exempted the company from any liability for the injury which he received.
Fourth. That the injury complained of was occasioned, in part at least, by the fault of the plaintiff, and not by the negligence of the defendants, and therefore, he is not entitled to recover. ‘
They say the through freight train was detained at Baltimore some twenty-five minutes beyond its usual time of departure, at the instance and request of the plaintiff, ,to enable him to get his stock on board, and that that delay was the cause of the collision, which resulted in the injury to the plaintiff, and without which he would not have received it.
We’will now proceed, gentlemen, to notice the several matters of defence, and endeavor to announce to you, as clearly as we can, the opinion of the Court, on the questions of law which have been presented to us for our consideration. They are new to us, at least some of them, and in- * volve nice and intricate questions, and though they have been argued with much ability on both sides, much has been left for us in determining the true line of principles upon which this case turns. We have, however, feeling the importance of the case, given to it all the attention our opportunity would afford. That the case is an important one, has not and we apprehend will not be denied. It is not only important to the unfortunate victim of the *496 disaster, but it is so to the defendants, and beyond the present case, that they may know their responsibility; and it is important to the community at large, that they may know the extent of their risk, and of their security and personal safety.
The great advantages of this company, and the convenience . it affords the travelling community, which all will admit, cannot be considered by you in your deliberations, nor should the fact of its existence as a corporation influence your verdict in any respect. But you should give to them the same measure of justice, and hold them to the same accountability that you would an individual of the community.
The first branch of the defence denies that the defendants stood, in respect to the plaintiff, in the relation of common carriers, and that, therefore, they are not liable to him for the injury complained of.
The second branch is also based on the assumption that they were not, in reference to this particular transaction, within the legal definition of common carriers; but that the engagement with the plaintiff" falls within the terms of a special contract or agreement, to carry the plaintiff safely, and that he cannot recover in this form of action, for a breach of it, but his remedy is in another form of action.
These two branches of the defence resolve themselves into one and the same principle, and the decision of the first will dispose of the latter.
"We will, therefore, for the present, pass to the remaining portions of the defence, the first of which is : that the relation in which the plaintiff stood to the defendants, was not that of a passenger or traveller over their road, but that he was in the freight train, rather in the character or capacity of an employee or servant, to take care of his stock, and upon terms and conditions which exempted the defendants from any liability for the injury which he received.
It is true, as a general principle of law, that the master is not liable to his servant for injuries occasioned by the *497 negligence of his fellow servants, in the course of their •common employment, provided the latter be a person of competent care and skill; and it is on the principle that when he engages to serve a master, he undertakes, as between him and his master, to run all the ordinary risks of the service; and this includes the risk of negligence of his fellow servants, whenever he is acting in discharge of his duty as servant of him who is the common master of both. But we are of opinion, that the relation of master and servant did not exist between the plaintiff" and defendants in reference to this case.
It appears that he was a drover, and that as such, was in the through freight train for the purpose of taking care of his stock, which the defendants had received on board for transportation in that train. It also appears that it was the established practice and usage of the company to grant to the owners of live stock, transported over their road, what is termed a drover’s ticket, for the purpose of taking care of his stock and upon his releasing the company from any risk on account of it, and paying the rate of freight charged under such circumstances, which ticket authorized such owner to travel or pass in that train without any further fare or compensation than what was included in the freight charged and paid for the stock; and it also appears that the rate of freight charged by the company on live stock, was twenty-five per cent higher when neither the owner nor any one on his behalf passed in the train for the purpose of taking care of the stock. It was under such circumstances, and in accordance with this practice and usage of the company, as is alleged in behalf of the plaintiff, that he was travelling on this occasion, and at the time when the collision happened and the injury complained of was sustained. If you are satisfied, gentlemen, that such was the case, we say to you, that in our opinion it did not constitute the relation of employer and employee, or master and servant, between the company, and the plaintiff, so as to bring it within the principle of law which we have before stated. _ On the contrary, if such *498 was the case, we think, whether he had or had not a drover’s ticket, but had paid the freight charged under such circumstances for his stock, he was rightfully and lawfully a passenger on the freight train from the city of Baltimore to his place of destination : for we do not consider it necessary under, the circumstances that he should have had a ticket, and particularly if the conductor permitted him to remain in the train, to constitute him rightfully and lawfully a passenger in that freight train.
But it is insisted that they did not stand in the relation, or sustain the obligations to the plaintiff of common carriers of passengers for hire, because he was in a freight and not a passenger train. • And if we correctly apprehend these grounds, they are as follows: that if the plaintiff was even rightfully and lawfully on board the through freight train at the time of the collision, he cannot recover in this action, because, as the defendants allege in the first instance, they did not stand in the relation or sustain the obligations of common carriers of passengers for hire in regard to him, inasmuch as he was not on a passenger train, or train in which they commonly carried passengers; and in the second place, because, as they assume, he w'as in the freight train before mentioned under a special undertaking by the defendants as private carriers or ordinary bailees for hire, to carry him over their road, on an express condition that they were not to be liable for his personal safety, and if liable at all, were only liable as private carriérs, under a special undertaking, in anothér form of action.
In the solution of these -questions, gentlemen, we are necessarily led to the inquiry as to what are common carriers. Without entering into a general description or definition of the term, it will be sufficient for the purposes of this case to say that they consist of two classes: common carrier^ of goods, and common carriers of passengers for hire; and railroad companies being incorporated, by law for the transportation of persons and property, over the line of their respective roads for hire, are common carriers *499 of both descriptions. These are the objects for which they are instituted by law; it is their public employment, their principal and direct business, and not a casual or occasional occupation with them, and this beyond any doubt constitutes them common carriers of both descriptions. It may be proper to say, however, that if as a general thing they confine the transportation of goods to what is called the freight trains, and the conveyance of passengers to the regular passenger trains, they are common carriers of goods as to the former, and of passengers as to the latter; but nevertheless, if by a passenger train they are in the practice of also carrying goods for hire, they may become common carriers of goods by that train; and if by any freight train, they are in the habit of carrying passengers for hire, such as emigrants or drovers, or any other class of traders with their property, they may also, as td such persons, become common carriers of persons by that train, as well as of such property; • that is to say, by such practice they assume the obligations and liabilities of common carriers, indifferently both of persons and property by such trains.
There is a wide distinction, however, between the obligations which the law imposes upon common carriers of goods for hire, and common carriers of persons for hire. Common carriers of goods are responsible for all injuries thereto, except such as are caused by the act of God and the public enemies, even in the absence of negligence; because the law regards the former as insurers against all other injuries. But a common carrier of passengers is liable for injuries to the latter only in case of his negligence. But the lawdn its beneficence will not allow any trifling with the lives or personal safety of human beings, and therefore exacts great care, diligence and skill from those to whose charge as common carriers they are committed ; common carriers of passengers are responsible for any negligence resulting in injury to them, and are required in the preparation, conduct and management of their means of conveyance, to exercise every degree of care, diligence, and skill, which a reasonable man would *500 use under such circumstances. This obligation is imposed on them as a public duty, and by their contract, to carry safely, as far as human care and foresight will reasonably admit. A railroad company, using as it does the powerful and dangerous agency of steam, is hound to provide skilful and careful servants, competent in every respect for the posts they are appointed to fill in their service; and is responsible not only for their possession of such care and skill, but also for the continued application of these qualities at all times. Pierce on American Railroad Law, 469, 470, 471.
These are the obligations, as we understand them, which the law, out of its regard for the lives and personal safety of human beings, imposes upon common carriers of passengers for hire; but it is argued and insisted, in behalf of the defendants, that they did not, in respect to the plaintiff in this case, stand in the relation of common carriers of passengers for hire; because, they say, they never held themselves out to the public as such on any of their freight trains passing from Baltimore; that they never opened their ticket office at the former place for the sale of'tickets to passengers to go by such trains, and that by a regulation of the company their agents and servants were prohibited from taking passengers on these freight trains, unless specially authorized to do so by the president or general superintendent of the company, or other officers thereof having power to confer on them such authority, and therefore they say they are not bound by these obligations in the present case; hut if liable at all, it-was on a special undertaking to carry him in a freight train, and subject to a general condition published on their “ drovers’ tickets,” and constituting one of the. regulations of the company, that they would not assume any risk or responsibility for the personal safety of such a passenger on such a train. But we have already informed you, that if you are satisfied, from the evidence in the cause, that it was the practice of the company to receive and carry the owners of live stock with their stock on such trains, upon their paying the *501 freight charged under such circumstances, and that the plaintiff1 had paid his freight and was in the train in conformity with that usage, then he was there rightfully and lawfully, and the defendants and their servants were bound to exercise the same degree of care and diligence in conveying him over their road, in the train in question, as we have before described as incumbent by law on common carriers of passengers for hire generally, and that, so far as this duty was concerned, they stood in a no less responsible relation to him. For in our opinion it was inconsistent with the relation in which they stood to him, or would have stood to any similar passenger under the like circumstances, and utterly at variance with the duty which the law, on the ground of public policy, and as the conservator of the lives and the personal safety, as well as the property of individuals, imposes upon that, as well as upon other classes of common carriers of persons, to allow of such an exemption or limitation of their responsibility for the personal safety of their passengers against injuries resulting from their own negligence, or the want of due care and diligence in carrying them. And here we would take occasion to remark that this point does not raise the question, which was discussed at no inconsiderable length during the argument, and which has so often perplexed judges, both in this country and in England, that is to say, whether it is competent for a common carrier of goods to limit his responsibility for their safety, and which is an extreme and extraordinary liability, as we have before remarked, by a general or even a special notice brought home to the knowledge of the owner of them. For that question and the cases in which it has arisen, however much it may have been mooted and agitated, have never been held to apply to a common carrier of persons for hire; in regard to whom the common-law liability is not so extreme, it binding them only for such injuries as result from their own negligence. If, therefore, it is proved that the plaintiff was in this freight train of the defendants, as before stated, that is to say, in accordance with a regula *502 tian or practice of the company, specially applicable to such persons, and even if you should be satisfied that he had on that occasion a drover’s ticket in his possession, of" the description which has b'een offered and read in evidence, and consequently knew of the general condition which it contained, that no risk would be assumed by the company for his personal safety, it would not exempt the company from their legal liability for the injury which he sustained, provided you should be further satisfied, when you come to review and consider all the facts and circumstances proved in the cause, that the. injury complained of was directly attributable to any negligence or want of care and diligence on the part of the servants of the defendants on the occasion. Because it would be contrary to public policy to sanction such a limitation or exemption of the responsibility of the company for injuries to a person under such circumstances, resulting from the negligence of their servants.
We come now, gentlemen, to the consideration of that part of the defence which rests on the assumption that the injury complained of was the fault of the plaintiff, and not attributable to the negligence or fault of the defendants.
It is true, as a general proposition, as stated by the defendants’ counsel, that if the negligence of the plaintiff was the cause of the injury, or if it co-operated with the negligence and misconduct of the defendants to produce it, the, plaintiff would not be entitled to recover, because he could not hold others liable for the consequences of his own negligence. But this rule does not apply unless he could have avoided the injury by the exercise of due care on his own part. If he could not avoid it by such care, the want of it would not preclude his right of recovery.
This principle, however, is more properly applicable to another class of cases essentially different from the one we are now considering.
In the case referred to by the defendants’ counsel, the injured party was approaching the track and had an uninterrupted view of it in the direction from which the train *503 was coming, so that he might have seen it, had he turned' his eyes in that direction. It was considered that if the plaintiff saw the train, it was an act of madness for him voluntarily to place himself in its way, and if he did not see it, it was only because he unwisely allowed his attention to be drawn in another direction. In this case, which we are now considering, the fault which is alleged to be due to the plaintiff, and to which the collision and consequent injury to the plaintiff are attributed, was in his re; questing the defendants to delay the departure of the train at Baltimore until he could get his stock on board. It did not necessarily follow that the detention of twenty-five minutes, whether it was for the purpose of taking the plaintiff’s stock on board or for some other reason (and the evidence is somewhat conflicting on that point), that the injury resulted from it. But, gentlemen, assuming it to be true that the delay of twenty-five minutes at Baltimore was to enable the plaintiff to get his stock on board, whatever might be the consequences of the delay, they are not chargeable upon the plaintiff, for he had no power of controlling the action of the defendants’ servants; it was entirely optional with them whether they detained the train or left at the regular and appointed time, and if they chose to wait till the plaintiff’s stock was put on board it was their own voluntary act, and they cannot by reason of it exempt themselves from the liability which would have rested upon them had they made their departure at the regular and appointed time.
We have now, gentlemen, submitted tp you our views upon the several questions of law which are involved in this cqse, and it only remains for you to apply them to the facts as they have been proved before you.
Ton cannot fail to perceive, however, that with the views which we have expressed in regard to the questions of law which have been raised in the trial of the case, that it turns in a great measure on a question of due diligence on the part of the officers and servants of the defendants having the management of the two freight trains on the evening *504 of the collision. The fact of collision, and that the plaintiff was injured by it, in the manner proved before you,1 are not disputed, we believe. It has been maintained, and cases have been cited to show, that where two railroad trains, running on the Same road and 'belonging to or under the control of the same company, come in collision, the law imputes negligence to the officers having charge of one or both of the trains, as such accidents can rarely occur if due diligence be observed by such officers. This ‘ renders it therefore necessary for'a railroad company to show, when a collision occurs between two of its trains," and a suit is instituted by a passenger injured by it, that it was'not attributable to the negligence of its servants. But this is only a legal presumption, and is liable to be rebutted by evidence to the contrary; and if any proof is adduced tó the contrary, it is the province of the jury to determine it, as any other fact, from all the evidence before them.
It will be your duty, therefore, gentlemen, upon a view of all the facts and circumstances of the case, properly applied by you to the law as we have announced to you, to determine the question of liability on the part of .the defendants to the plaintiff for the injury complained of. If he .was oh the train rightfully and lawfully, as before stated, and sustained the injury in consequence of the collision, and you are satisfied that the injury was the result of the negligence of the defendants’ servants (and the question of negligence is one of'fact for you to determine), the plaintiff is entitled to your verdict for such damages as you in your sound judgment and discretion may consider him to have sustained. But if, on the contrary, you should be of opinion that they were guilty of no negligence, or that he was not rightfully and lawfully there in such a relation to the defendants as renders them liable to him for the injury, on the principle before stated, your verdict should be for the defendants.
The measure of damages, provided your verdict should be for the plaintiff, is purely a question for your consideration ; and we have no disposition, gentlemen, if we had *505 the right, to invade your province in this or any other respect.
The plaintiff had a verdict for thirteen thousand dollars damages.
The case was afterwards taken to the Court of Errors and Appeals on a bill of exceptions tendered to the charge of the Court by the defendants, but the same was sustained and affirmed on all the points ruled by the court below.